## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| EMILY SIMMONS, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>NORTH CASTLE PARTNERS; SPROUT FOODS, INC.; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.: 3:21-cv-488<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Emily Simmons ("Plaintiff"), individually and on behalf of the Class and Subclasses of all others similarly situated, brings this class action against Defendants North Castle Partners and Sprout Foods, Inc. ("North Castle" or "Sprout" and, collectively, "Defendants"), based on Defendants' misleading, deceptive and unfair business practices with respect to the marketing, advertising, labeling, packaging and sale of their baby food products, which contain levels of toxic heavy metals.

## NATURE OF ACTION

1.     This case involves a straightforward and systematic course of false, misleading, and unlawful conduct: Defendants have misrepresented and falsely advertised that the baby food products they sell are organic, non-GMO, free from preservatives, and safe for infant and child consumption.

2.     Parents and other caregivers, including Plaintiff and members of the Class and Subclasses, reasonably believe that the baby food they purchase will be healthy, nutritious, and free from harmful substances and contaminants. However, on February 4, 2021, The United States House of Representatives Subcommittee on Economic and Consumer Policy, Committee

on Oversight and Reform ("Subcommittee") published a report ("Subcommittee Report"), revealing its findings that numerous baby foods are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[1]

3.     Following reports alleging high levels of toxic heavy metals in baby foods, the Subcommittee requested internal documents and test results from seven of the largest manufacturers of baby food in the United States, including North Castle's Sprout. However, Defendants refused to cooperate with the investigation. "Despite numerous emails to executives and its general information email address, as well as numerous attempts to reach the Sprout central office by telephone, Sprout never responded or made contact with the Subcommittee."[2] The Subcommittee found this lack of transparency greatly concerning, as even limited independent testing has revealed the presence of toxic heavy metals in its products.[3]

4.     Given the health risks associated with the consumption of high levels of toxic heavy metals, the presence of these substances is material to consumers.

5.     Defendants knew that the presence of toxic heavy metals in their baby food products was material to consumers, which is evidenced by their representations that their baby food products are organic, non-GMO, free from preservatives, and safe for consumption by infants and young children. Yet Defendants chose to omit and conceal that their baby food products contained, or were at risk of containing, levels of heavy toxic metals, and therefore deceptively misled Plaintiff and members of the Classes that purchased these products in reliance on Defendants' representations.

---

[1] *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report, Staff of H. Subcomm. On Econ. And Consumer Policy, Comm. On Oversight and Reform, 117th Cong., https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (Feb. 4, 2021) ("Subcommittee Report").
[2] *Id.* at 46.
[3] *Id.*

6.      Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendants' falsely and deceptively labeled baby food products during the statute of limitations period, for breach of express and implied warranty, fraud by omission, intentional and negligent misrepresentation, quasi contract, unjust enrichment, and restitution, and for violations of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*

## THE PARTIES

7.      Plaintiff Emily Simmons is a citizen of the State of Florida and is a member of the Nationwide Class and the Florida Subclass. Plaintiff purchased various flavors of Sprout's Baby Food Pouches.

8.      Plaintiff believed she was feeding her children healthy, nutritious foods during the time she purchased and fed her children Defendants' baby food products. Due to the false and misleading claims and omissions by Defendants as described herein, Plaintiff was unaware that the baby food products sold by Defendants contained any level of toxic heavy metals, and Plaintiff would not have purchased the products if that information had been fully disclosed.

9.      Defendant North Castle is a citizen of Delaware, where it is incorporated and Connecticut, where it maintains its principal place of business at 183 East Putnam Avenue, Greenwich, CT 06830. Defendant North Castle acquired a controlling interest in Sprout Organic Foods, Inc., in 2015.[4] Upon information and belief, Defendant North Castle formulates, develops, manufactures, distributes, markets, advertises and sells its baby food products throughout the United States under the Sprout label.

---

[4] *North Castle Partners Invests in Sprout Organic Foods, Inc.*, https://www.northcastlepartners.com/news-media/north-castle-partners-invests-in-sprout-organic-foods-inc/#:~:text=North%20Castle%20Partners%20announced%20today,in%20Sprout%20Organic%20Foods%2C%20Inc.&text=The%20organic%20baby%20food%20category,market%20with%20strong%20underlying%20fundamentals.

10. Defendant Sprout is a citizen of Delaware, where it is incorporated, and New Jersey, where it maintains its principal place of business at 50 Chestnut Ridge Road, #205, Montvale, NJ, 07645. Defendant Sprout formulates, develops, manufactures, distributes, markets, advertises and sells its baby food products throughout the United States.

11. The true names and capacities of Does 1 through 10, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues such Doe defendants under fictitious names. Upon information and belief, each Defendant designated as a Doe is in some manner highly responsible for the occurrences alleged herein, and Plaintiff and Class members' injuries and damages, as alleged herein, were proximately caused by the conduct of such Doe defendants. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of such DOE defendants when ascertained.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs (defined below) are citizens of states different from Defendants. Further, greater than two-thirds of the Class members reside in states other than the state in which Defendants are a citizen.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) in that Defendant North Castle is a corporation that maintains its principal place of business in this jurisdiction. Further, Defendant North Castle and Defendant Sprout (a) are authorized to conduct business in this district and have intentionally availed themselves of the laws and markets within this district through the promotion, marketing, distribution and sale of their products in this

district; (b) do substantial business in this district; and (c) are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### A.   Defendants Falsely Marketed and Advertised their Baby Food Products

14.     Defendants manufacture, market, advertise, label, represent, warrant, distribute, and sell baby food products throughout the United States under the Sprout label. Defendants make various representations about their Products, including that they are "organic" "non-GMO" and "preservative free."

15.     Defendants' slogan for Sprout baby food is "Keep it Honest. Make it Real."[5] Defendants promise that they are committed to providing families with the "highest quality products"[6] and that they "rigorously source[s] the ingredients used in our recipes to ensure that the cleanest and safest food is delivered to your family."[7]

16.     Defendant Sprout states that its "primary value is providing safe, healthy and delicious food products for children."[8] Sprout further represents "[i]f it isn't safe, healthy and delicious, we don't make it. Our ingredients and packaging are carefully chosen to make the best products possible."[9]

17.     The products at issue are various types of North Castle's Sprout baby food products that contain, or may contain, heavy metals, including but not limited to the Sprout products purchased by Plaintiff ("Products"),[10] and may include other Sprout Products, including but not limited to:

---

[5] *Sprout Organic Foods*, http://www.sproutorganicfoods.com/
[6] *Sprout Organic Foods, Values & Guarentee*, http://www.sproutorganicfoods.com/about-us/values-guarantee
[7] *Sprout Organic Foods, Sourcing*, http://www.sproutorganicfoods.com/about-us/sourcing
[8] *Sprout Organic Foods, FAQs*, http://www.sproutorganicfoods.com/about-us/sourcing
[9] *Id.*
[10] Plaintiff reserves the right to amend this definition upon completion of discovery.

- Sprout Stage 2 (6+ months) Butternut Carrot & Apple with Beef Broth Baby Food Pouch
- Sprout Stage 2 (6+ months) Homestyle Vegetables & Pear with Chicken Broth Baby Food Pouch
- Sprout Stage 2 (6+ months) Apricot Banana Chickpea Fig Baby Food Pouch
- Sprout Stage 2 (6+ months) Butternut Blueberry Apple with Beans Baby Food Pouch
- Sprout Stage 2 (6+ months) Carrot Chickpeas Zucchini Pear Baby Food Pouch
- Sprout Stage 2 (6+ months) Strawberry Apple Beet Red Beans Baby Food Pouch
- Sprout Stage 2 (6+ months) Sweet Potato White Beans with Cinnamon Baby Food Pouch
- Sprout Stage 2 (6+ months) Apple Banana Butternut Squash Baby Food Pouch
- Sprout Stage 2 (6+ months) Apple Blueberry Baby Food Pouch
- Sprout Stage 2 (6+ months) Apricot Peach Pumpkin Baby Food Pouch
- Sprout Stage 2 (6+ months) Carrot Apple Mango Baby Food Pouch
- Sprout Stage 2 (6+ months) Pear Kiwi Peas Spinach Baby Food Pouch
- Sprout Stage 2 (6+ months) Strawberry Pear Banana Baby Food Pouch
- Sprout Stage 2 (6+ months) Sweet Potato Apple Spinach Baby Food Pouch
- Sprout Stage 2 (6+ months) Apple Oatmeal Raisin with Cinnamon Baby Food Pouch
- Sprout Stage 2 (6+ months) Blueberry Banana Oatmeal Baby Food Pouch
- Sprout Stage 2 (6+ months) Mixed Berry Oatmeal Baby Food Pouch
- Sprout Stage 2 (6+ months) Peach Oatmeal with Coconut Milk & Pineapple Baby Food Pouch
- Sprout Stage 2 (6+ months) Apple Kale Plant Power Puffs
- Sprout Stage 2 (6+ months) Carrot Peach Mango Plant Power Puffs
- Sprout Stage 3 (8+ months) Butternut Chickpea Quinoa & Dates Baby Food Pouch
- Sprout Stage 3 (8+ months) Pumpkin Apple Red Lentil with Cinnamon Baby Food Pouch
- Sprout Stage 3 (8+ months) Sweet Pea Carrot Corn and White Bean Baby Food Pouch

- Sprout Stage 3 (8+ months) Creamy Vegetables with Chicken Baby Food Pouch
- Sprout Stage 3 (8+ months) Garden Vegetables Brown Rice with Turkey Baby Food Pouch
- Sprout Stage 3 (8+ months) Harvest Vegetables Apricot with Chicken Baby Food Pouch
- Sprout Stage 3 (8+ months) Market Vegetables Pear with Turkey Baby Food Pouch
- Sprout Stage 3 (8+ months) Root Vegetables Apple with Beef Baby Food Pouch
- Sprout Toddler Cheesy Spinach Crinklez
- Sprout Toddler Pumpkin Carrot Crinklez
- Sprout Toddler Broccoli Curlz
- Sprout Toddler Sweet Potato Cinnamon Curlz
- Sprout Toddler White Cheddar Curlz
- Sprout Toddler Red Fruit Beet & Berry Crispy Chews
- Sprout Toddler Apple Carrot Cinnamon Wafflez
- Sprout Toddler Blueberry Apple Wafflez
- Sprout Toddler Pumpkin Butter & Jelly Wafflez
- Sprout Toddler Baby Burrito Bowl Meal
- Sprout Toddler Butternut Mac & Cheese Meal
- Sprout Toddler Pasta with Veggie Sauce Meal
- Sprout Toddler Veggie Power Bowl Meal

18.    Defendants use words such as "organic" and ages such as "6+ Months", "8+ Months" and "Toddler" to emphasize the foods suitability for consumption by infants and young children.

19.    Defendants' labels and packaging do not disclose that the Products contain, or may contain, levels of toxic heavy metals.

**B.    Defendants' Marketing and Advertising Misled and Deceived Consumers**

20.    Parent consumers are drawn to representations such as the ones claimed on Defendants' website and packaging because parents pay attention to what ingredients are in the baby food they purchase for their child. Parents are cautious and vigilant because they do not want to expose their children to potentially harmful substances or chemicals, such as heavy metals like arsenic, lead, mercury, and cadmium.

21.     Defendants' marketing of their Products wrongfully conveys to consumers that the Products have certain superior quality and characteristics that they do not actually possess. For example, Defendants' misrepresentations caused Plaintiff and other consumers to believe that their Products do not contain high levels of toxic heavy metals through their marketing and omissions, which is material information to a reasonable consumer.

22.     In light of Defendants' marketing, including their professed commitment to providing organic, non-GMO products that are free from preservatives, Defendants knew or should have known that the Products contained toxic heavy metals or potentially dangerous contaminants that pose health risks to humans, and particularly to infants and young children. Defendants knew consumers purchased the Products based on the reasonable expectation that Defendants manufactured the Products in a way that was prescribed by their marketing and advertising.

23.     Defendants intended that Plaintiff and Class Members and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Defendants, as well as their advertising, marketing, and labeling of the Products as organic, non-GMO, free from preservatives, and safe for infant and child consumption.

24.     Based on Defendants' decision to advertise, label, and market their Products as organic, non-GMO and free from artificial preservatives, Defendants had a duty to ensure that these statements were true and not misleading. As such, Defendants knew or should have known that the Products included nondisclosed levels of toxic heavy metals.

25.     However, Defendants' marketing is deceptive, misleading, unfair and false to Plaintiff and other consumers of their Products. Defendants failed to disclose that the products

contain or may contain any level of heavy metals or other undesirable toxins or contaminants. Defendants intentionally omitted this in order to induce and mislead reasonable consumers like Plaintiff and members of the Classes to purchase the Products.

26.     As a result of Defendants' omissions, a reasonable consumer would have no reason to suspect the presence of heavy metals in the Products without conducting his or her own tests or relying on tests conducted by a third party.

27.     Defendants therefore acted negligently, recklessly, unfairly, and/or intentionally with their deceptive, misleading, unfair, and false marketing and omissions as described herein.

**C.     Heavy Metals**

28.     Heavy metals such as arsenic, lead, mercury, and cadmium are known as "developmental neurotoxins" that can harm a baby's developing brain and nervous system. Exposure to these neurotoxins can result in a loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder ("ADHD").[11] Though heavy metals are naturally found in the environment, most heavy metals in foods come from contaminated soil or water. The contamination comes from either farming or manufacturing practices, such as the use of pesticides, mining, and smelting or pollution.

29.     The U.S. Food and Drug Administration ("FDA") has declared that inorganic arsenic, lead, cadmium, and mercury are dangerous, particularly to infants and children, and "lead to illness, impairment, and in high doses, death."[12]

30.     Healthy Babies Bright Futures—an alliance of nonprofit organizations, scientists and donors that design and implement programs to reduce babies' exposure to toxic chemicals—

---

[11] Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, Healthy Babies Bright Futures, at 9 (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf ("Healthy Babies Bright Futures Report").
[12] Subcommittee Report at 9.

tested a variety of baby foods to determine the levels of heavy metals contained in their products and published their report in or around October 2019 ("Healthy Babies Bright Futures Report").[13]

31.     The Healthy Babies Bright Futures Report revealed that the Sprout Organic Quinoa Apple Kale Puffs contains 107 parts per billion ("ppb") of arsenic, 47 ppb of which was inorganic arsenic, 39.3 ppb of lead, 41.5 ppb of cadmium, and 1.31 ppb of mercury.[14]

32.     In addition to the Healthy Babies Bright Futures Report, the Subcommittee published a report revealing findings that numerous baby foods are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[15] Defendants did not cooperate with the Subcommittee's investigation. Defendants refused to produce any documents showing their internal testing policies, testing results, or how it treats ingredients and/or products that surpass any internal standards.[16]

33.     As noted by the Subcommittee, babies' developing brains are "exceptionally sensitive to injury caused by toxic chemicals, and several developmental processes have been shown to be highly vulnerable to chemical toxicity."[17]

34.     Furthermore, the Subcommittee Report noted that exposing children to toxic heavy metals causes permanent decreases in IQ, an increased risk of future criminal and antisocial behavior, and "untreatable and frequently permanent" brain damage. The Subcommittee Report demonstrated the consequences that can result due to exposure to toxic

---

[13] *See generally* Healthy Babies Bright Futures Report.
[14] *Id.* at 26.
[15] Subcommittee Report at 9.
[16] *Id.* at 43.
[17] Subcommittee Report at 9.

heavy metals, noting that one study showed that for each IQ point lost, a child's lifetime estimated earning capacity will decrease by over $18,000.[18]

a. __Arsenic__

35.     Arsenic is a heavy metal contaminant that is found in food and drinking water from its long-time use as a pesticide and additive in animal feed. Arsenic has been known to cause bladder, lung, and skin cancer, and can also harm the developing brain and nervous system.[19] At least 13 studies link arsenic to IQ loss for children exposed to it in utero or during the first few years of life.[20]

36.     Another study on the effects of arsenic revealed an average loss of 5-6 IQ points among those who drank well water contaminated with arsenic at or above 5 ppb.[21] Studies find lasting impacts when young children are exposed to arsenic early in life, and there is no evidence that the effects of exposure are reversible.[22]

37.     The harmful effects of exposure to arsenic have caused the FDA to set standards limiting the allowable amount of inorganic arsenic in various products, such as 10 ppb for bottled water.[23] However, the Sprout Organic Quinoa Apple Kale Puffs contains 107 parts per billion ("ppb") of arsenic, 47 ppb of which was inorganic arsenic.[24]

---

[18] *Id.*
[19] Healthy Babies Bright Futures Report at 13.
[20] *Id.*
[21] *Id.*
[22] *Id.* ("Studies find lasting impacts when children are exposed to arsenic early in life, including persistent IQ deficits in children two years after their polluted drinking water was replaced, cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."
[23] 21 C.F.R. § 165.110; Subcommittee report at 4.
[24] Healthy Babies Bright Futures Report at 26.

b.      **Cadmium**

38.     Cadmium is a heavy metal that has been linked to neurotoxicity, cancer, kidney damage, bone damage, and heart damage.[25]

39.     Cadmium is a number seven on the Agency For Toxic Substances and Disease Registry's ("ATSDR") list of substances that is present in the environment that pose the most significant potential threat to human health, and is associated with decreases in IQ and the development of ADHD.[26]

40.     The FDA has set the maximum allowable level of cadmium in bottled water at 5 ppb.[27] However, according to the Subcommittee's findings, the test results of baby foods and their ingredients "eclipse those levels."[28] In fact, Sprout Organic Quinoa Apple Kale Puffs contains 41.5 ppb of cadmium.[29]

c.      **Lead**

41.     Lead is a heavy metal that widely contaminates food from its long-time use as a pesticide, its use in food processing equipment, and its presence at elevated levels in soil.[30] Lead is a number two on ATSDR's list of substances present in the environment that pose the most significant potential threat to human health, and is associated with behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.[31]

---

[25] *Id.* at 14.
[26] Subcommittee report at 12.
[27] *Id.* at 4.
[28] *Id.*
[29] Healthy Babies Bright Futures Report at 26.
[30] *Id.* at 13.
[31] Subcommittee Report at 11.

42.     According to the FDA, lead is especially dangerous to infants and young children.[32] Lead exposure has been shown to severely affect academic achievement in children, and the effects of early childhood exposure appear to be permanent.[33]

43.     The FDA has set the maximum allowable levels in bottle water at 5 ppb of lead.[34] However, Sprout Organic Quinoa Apple Kale Puffs contains 39.3 ppb of lead.[35]

### d.    Mercury

44.     Mercury is a pollutant released from coal-fired power plants, mining operations and other sources.[36] Mercury is number three on ATSDR's list of substances present in the environment that pose the most significant potential threat to human health.[37]

45.     Pre-natal mercury exposure has been "consistently associated with adverse subsequent neuro-development," and post-natal mercury exposure has been associated with autistic behaviors among preschool-age children.[38]

46.     The FDA has capped the allowable level of mercury in drinking water at 2 ppb.[39]

## D.    Plaintiff and Class Members' Reliance was Reasonable

47.     Plaintiff and Class Members reasonably relied on Defendants' claims, warranties, representations, advertisements, and other marketing sources concerning the quality of the Products.

48.     Plaintiff and Class Members read and relied upon the labels and packaging of the Products when making purchasing decisions. Had Plaintiff and Class Members known

---

[32] *Id.*
[33] *Id.*
[34] *Id.* at 4.
[35] Healthy Babies Bright Futures Report at 14.
[36] *Id.* at 14.
[37] Subcommittee Report at 12.
[38] *Id.* at 12–13.
[39] *Id.* at 4.

Defendants' Products actually contained high levels of heavy metals, Plaintiff and Class Members would not have purchased the Products.

49.    A reasonable consumer would consider the labeling of a product when deciding whether or not to purchase it. Here, Plaintiff and Class Members relied on the statements and omissions on the Products' labeling that led them to believe the Products were organic, non-GMO, free from preservatives, and did not contain levels of toxic heavy metals.

### CLASS ACTION ALLEGATIONS

50.    Plaintiff brings this action individually and on behalf of all other similarly situated Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks certification of the following Classes:

#### Nationwide Class

All persons within the United States who purchased Sprout Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

#### Florida Subclass

All persons within the State of Florida who purchased Sprout Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

51.    Excluded from the Classes are the following individuals and/or entities: Defendants and their parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

52.     Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or add subclasses before the Court determines whether certification is appropriate.

53.     **Numerosity**: The proposed Class and Subclass are so numerous that joinder of all members would be impractical. The Products are sold throughout the United States, directly and by third-party retailers. The number of individuals who purchased the Products during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

54.     **Common Questions Predominate**: There are questions of law and fact common to the proposed Class and Subclasses that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

   a.     Whether Defendants misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

   b.     Whether Defendants' use of false or deceptive packaging and advertising constituted false or deceptive advertising;

   c.     Whether Defendants engaged in unfair, unlawful and/or fraudulent business practices;

   d.     Whether Defendants' representations concerning the Products were likely to deceive a reasonable consumer;

e.      Whether Defendants' unlawful conduct, as alleged herein, was intentional and knowing;

f.      Whether Defendants represent to consumers that the Products have characteristics, benefits, or qualities that they do not have;

g.      Whether Plaintiff and the Classes are entitled to damages and/or restitution, and in what amount;

h.      Whether Defendants are likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

i.      Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

55.    Defendants have engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff and members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendants' deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiff and members of the Classes has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as each of the Products: (a) bear the materially same representations regarding the health and quality of the Products, in that they are organic, non-GMO, free from preservatives and safe for consumption by infants and young children, and (b) the Products actually contain or are at risk of containing levels of toxic heavy metals. Therefore, individual questions, if any, pale in comparison to the numerous common questions predominating in this action.

56.     **Typicality**: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendants' uniform unlawful conduct as alleged herein.

57.     **Adequacy**: Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with, and are in no way antagonistic to, the interests of the putative Class members she seeks to represent.  Plaintiff has also retained counsel competent and experienced in class action litigation and they intend to prosecute this action vigorously. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

58.     **Superiority**: The nature of this action and the nature of the laws available to Plaintiff and the Classes make the use of the class action format a particularly efficient and appropriate procedure to afford relief to them and the Classes for the wrongs alleged. The damages or other financial detriment suffered by individual Class members is miniscule compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class members would not likely recover, or would not likely have the chance to recover, damages and/or restitution from Defendants, which would continue to retain the proceeds of their wrongful conduct. Additionally, injunctive relief for the benefit of Class members and the public would not be possible absent class treatment and Defendants' wrongful conduct would persist unabated. Further, individualized litigation would increase the delay and expense to all parties and would multiply the burden on the judicial system presented by the complex legal and factual issues of this case. Finally, Defendants have acted, or have failed to act, on grounds generally

applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes. Individualized litigation presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Breach of Express Warranty**
***(on behalf of the Classes)***

59.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-58, as though fully set forth herein.

60.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants for breach of express warranty.

61.     Defendants marketed and sold the Products into the stream of commerce with the intent that the Products would be purchased by Plaintiff and members of the Classes.

62.     Defendants expressly warranted, advertised, and represented to Plaintiff and members of the Classes that the Products were and are organic, non-GMO, free from preservatives, and safe for infant and child consumption.

63.     Defendants made these express warranties regarding the Products' quality, ingredients, and suitability for consumption in writing through their website, advertisements, and marketing materials and on the Products' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiff and members of the Classes entered into upon purchasing the Products.

64.     Defendants' advertisements, warranties, and representations were made in connection with the sale of the Products to Plaintiff and members of the Classes. Plaintiff and

members of the Classes relied on Defendants' advertisements, warranties, and representations regarding the Products in deciding whether or not to purchase Defendants' Products.

65.     Defendants' Products do not conform to Defendants' advertisements, warranties and representations in that they are not safe or appropriate for consumption by infants and young children, and contain, or may contain, levels of toxic heavy metals.

66.     Defendants were on notice of this breach, as Defendants were aware of the included heavy metals in the Products due to their own professed commitment to providing high quality organic and non-GMO products, and based on the investigation in the Healthy Babies Bright Futures report that revealed the Products as containing various levels of toxic heavy metals.

67.     Privity exists because Defendants expressly warranted to Plaintiff and members of the Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were organic, non-GMO, free from preservatives, and safe for infant and child consumption, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

68.     As a direct and proximate result of Defendants' conduct, Plaintiff and members of the Classes have suffered actual damages in that they purchased Products that were worth less than the price they paid and they would not have purchased had they known of the risk and/or presence of heavy metals and/or other contaminants that do not conform to the products' marketing and advertisements.

69.     Plaintiff and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## SECOND CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
#### *(on behalf of the Classes)*

70.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-58, as though fully set forth herein.

71.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants for breach of implied warranty of merchantability.

72.     Defendants are merchants engaging in the manufacturing and sale of goods that were purchased by Plaintiff and members of the Classes.

73.     At all times mentioned herein, Defendants manufactured or supplied the Products, and prior to the time the Products were purchased by Plaintiff and members of the Classes, Defendants impliedly warranted to them that the Products were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Products' containers and labels, including that the food was organic, non-GMO, free from preservatives, and safe for infant and child consumption. Plaintiff and members of the Classes relied on Defendants' promises and affirmations of fact when they purchased the Products.

74.     Contrary to these representations and warranties, the Products were not fit for their ordinary use, consumption by infants or young children, and did not conform to Defendants' affirmations of fact and promises as they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

75.     Defendants breached their implied warranties by selling Products that failed to conform to the promises or affirmations of fact made on the container or label, as each product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

76.     Defendants were on notice of this breach, as Defendants were aware of the included heavy metals in the Products due to their own professed commitment to providing high quality organic and non-GMO products, and based on the investigation in the Healthy Babies Bright Futures report that revealed the Products as containing various levels of toxic heavy metals.

77.     Privity exists because Defendants impliedly warranted to Plaintiff and members of the Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were organic, non-GMO, free from preservatives, and safe for infant and child consumption, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

78.     As a direct and proximate result of Defendants' conduct, Plaintiff and members of the Classes have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known the presence or risk of heavy metals and/or unnatural or other ingredients.

79.     Plaintiff and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**THIRD CAUSE OF ACTION**
**Fraud by Omission**
***(on behalf of the Classes)***

80.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-58, as though fully set forth herein.

81.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants for fraud by omission.

82.     Defendants concealed from and failed to disclose to Plaintiff and members of the Classes that the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

83.     Defendants were under a duty to disclose to Plaintiff and members of the Classes the true quality, characteristics, ingredients and suitability of the Products because: (1) Defendants were in a superior position to know the true state of facts about their products; (2) Defendants were in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption by infants and young children; and (3) Defendants knew that Plaintiff and members of the Classes could not reasonably have been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

84.     The facts concealed or not disclosed by Defendants to Plaintiff and members of the Classes are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products.

85.     Plaintiff and members of the Classes justifiably relied on Defendants' omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Products, which is inferior when compared to how the Products are advertised and represented by Defendants.

86.     As a direct and proximate result of Defendants' conduct, Plaintiff and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the

risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

87.     Plaintiff and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**FOURTH CAUSE OF ACTION**
**Negligent Misrepresentation**
***(on behalf of the Classes)***

88.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-58, as though fully set forth herein.

89.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants for negligent misrepresentation.

90.     Defendants marketed the Products in a manner indicating that the Products were and are organic, non-GMO, free from preservatives, and safe for infant and child consumption. However, the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging. Therefore, Defendants have made misrepresentations about the Products.

91.     Defendants' misrepresentations regarding the Products are material to a reasonable consumer because they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

92.     At all relevant times when such misrepresentations were made, Defendants knew or had been negligent in not knowing that the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants. Defendants have no reasonable grounds for believing their misrepresentations were not false and misleading.

93.    Defendants intended that Plaintiff and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Defendants, as well as their advertising, marketing, and labeling of the Products as organic, non-GMO, free from preservatives, and safe for infant and child consumption.

94.    Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased the Products at all.

95.    Therefore, as a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

96.    Plaintiff and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## FIFTH CAUSE OF ACTION
### Intentional Misrepresentation
*(on behalf of the Classes)*

97.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-58, as though fully set forth herein.

98.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants for intentional misrepresentation.

99.     Defendants marketed the Products in a manner indicating that the Products were and are organic, non-GMO, free from preservatives, and safe for infant and child consumption. However, the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging. Therefore, Defendants have made misrepresentations about the Products.

100.    Defendants' misrepresentations regarding the Products are material to a reasonable consumer because they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

101.    At all relevant times when such misrepresentations were made, Defendants knew that the representations were misleading, or acted recklessly in making the representations, without regard to the truth.

102.    Defendants intended that Plaintiff and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Defendants, as well as their advertising, marketing, and labeling of the Products as organic, non-GMO, free from preservatives, and safe for infant and child consumption.

103.    Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' intentional misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at all.

104.    Therefore, as a direct and proximate result of Defendants' intentional misrepresentations, Plaintiff and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not

have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

105.    Plaintiff and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## SIXTH CAUSE OF ACTION
### Quasi Contract/Unjust Enrichment/Restitution
### *(on behalf of the Classes)*

106.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-58, as though fully set forth herein.

107.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants for quasi contract, unjust enrichment, and restitution.

108.    As alleged herein, Defendants have intentionally and recklessly made misleading representations to Plaintiff and members of the Classes to induce them to purchase the Products. Plaintiff and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendants. Plaintiff and members of the Classes therefore have been induced by Defendants' misleading and deceptive representations about the Products, and paid more money to Defendants for the Products than they otherwise would and/or should have paid.

109.    Plaintiff and members of the Classes have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiff and members of the Classes.

110.    The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Classes—i.e., Plaintiff and members of the Classes did not receive the full value of the benefit conferred upon Defendants.

111.   Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation conferred upon it without paying Plaintiff and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

112.   As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

**SEVENTH CAUSE OF ACTION**
**Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201 *et seq.***
(***On behalf of Plaintiff Emily Simmons and the Florida Subclass***)

113.   Plaintiff repeats and realleges the allegations contained in paragraphs 1-58, as if fully set forth herein.

114.   Plaintiff Simmons brings this claim individually and on behalf of the members of the proposed Florida Subclass against Defendants for violations of Florida Deceptive and Unfair Trade Practices Act, O Fla. Stat. §§ 501.201 *et seq.*

115.   Plaintiff Simmons and members of the Florida Subclass are "consumers," as defined by Fla. Stat. § 501.203(7), the products sold by Defendants are "goods" within the meaning of FDUTPA, and the transactions at issue constitute "trade or commerce" as defined by FDUTPA.

116.   The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204 provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

117.    For the reasons discussed herein, Defendants violated and continue to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Fla. Stat. § 501.201, *et seq*. Defendants' acts and practices, including their material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including Plaintiff Simmons and members of the Florida Subclass and other consumers acting reasonably under the circumstances, to their detriment.

118.    At all times mentioned herein, Defendants engaged in trade or commerce in Florida, as defined by Fla. Stat. § 501.203(8), in that they advertised, offered or sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

119.    Defendants repeatedly advertised, on the labels for their Products, on their website, packaging, and through national advertising campaigns, among other things, that their Products were organic, non-GMO, free from preservatives, and safe for infant and child consumption. Defendants failed to disclose the material information that their Products contained unsafe levels of toxic heavy metals.

120.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers and to induce them to purchase Defendants' Products without knowing that the Products contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff Simmons and members of the Florida Subclass suffered damages by purchasing Defendants' Products because they would not have purchased Defendants' Products had they known the truth, that the Products contain, or may contain, levels of toxic heavy metals.

121.    Defendants' deceptive trade practices caused Plaintiff Simmons and members of the Florida Subclass to suffer injury in fact and actual damages in the form of the loss or diminishment of value of the Products they purchased, which allowed Defendants to profit at the expense of Plaintiff Simmons and members of the Florida Subclass. The injuries Plaintiff Simmons and members of the Florida Subclass suffered were to legally protected interests. The gravity of the harm of Defendants' actions is significant and there is no corresponding benefit to consumers of such conduct.

122.    Plaintiff Simmons and members of Florida Subclass seek relief for the injuries they have suffered as a result of Defendants' unfair and deceptive acts and practices, as provided by FDUTPA and applicable law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, respectfully prays for following relief:

A.    Certification of this case as a class action on behalf of the Class and Subclasses defined above, appointment of Plaintiff as Class Representative, and appointment of her counsel as Class counsel;

B.    A declaration that Defendants' actions, as described herein, constitute violations of the law as described herein;

C.    An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the proposed Classes as a result of their unlawful, unfair and fraudulent business practices described herein;

D.      An award of injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of their conduct and pay them all money it is required to pay;

E.      An order directing Defendants to engage in a corrective advertising campaign;

F.      An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendants' conduct, trebled where appropriate;

G.      An award to Plaintiff and her counsel of their reasonable expenses and attorneys' fees;

H.      An award to Plaintiff and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

I.      For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims presented herein so triable.

Dated: April 7, 2021

**IZARD, KINDALL & RAABE LLP**

*/s/Oren Faircloth*

By:   Oren Faircloth
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
ofaircloth@ikrlaw.com

**CARLSON LYNCH LLP**
Todd D. Carpenter (to apply pro hac vice)
Scott G. Braden (to apply pro hac vice)
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.:   619-762-1900
Fax:   619-756-6991

tcarpenter@carlsonlynch.com
sbraden@carlsonlynch.com

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown (to apply pro hac vice)
Michael A. Tompkins (to apply pro hac vice)
Brett R. Cohen (to apply pro hac vice)
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel:    516-873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

*Attorneys for Plaintiffs*