# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LYNN HUNTLEY, SALVATORE STILE, EMILY SIMMONS, and FRANCES PRESSLEY, individually, and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>    v.<br><br>SPROUT FOODS, INC.; and DOES 1 through 10, inclusive,<br><br>         Defendants. | Case No.: 3:21-cv-00488-JAM<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Lynn Huntley, Salvatore Stile, Emily Simmons, and Frances Pressley ("Plaintiffs"), individually and on behalf of the Class and Subclasses (defined below) of all others similarly situated, bring this class action against Defendant Sprout Foods, Inc. ("Sprout" or "Defendant"), based on Defendant's misleading, deceptive and unfair business practices with respect to the marketing, advertising, labeling, packaging and sale of their baby food products, which contain levels of toxic heavy metals.

## NATURE OF ACTION

1.     This case involves a straightforward and systematic course of false, misleading, and unlawful conduct: Defendant has misrepresented and falsely advertised that the baby food products it sells are organic, non-GMO, free from preservatives, and safe for infant and child consumption.

2.     Parents and other caregivers, including Plaintiffs and members of the Classes and Subclasses, reasonably believe that the baby food they purchase will be healthy, nutritious, and free from harmful substances and contaminants. However, on February 4, 2021, The United States House of Representatives Subcommittee on Economic and Consumer Policy, Committee

1

on Oversight and Reform ("Subcommittee") published a report ("Subcommittee Report"), revealing its findings that numerous baby foods are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[1]

3.      Following reports alleging high levels of toxic heavy metals in baby foods, the Subcommittee requested internal documents and test results from seven of the largest manufacturers of baby food in the United States, including Defendant. However, Defendant refused to cooperate with the investigation. "Despite numerous emails to executives and its general information email address, as well as numerous attempts to reach the Sprout central office by telephone, Sprout never responded or made contact with the Subcommittee."[2] The Subcommittee found this lack of transparency greatly concerning, as even limited independent testing has revealed the presence of toxic heavy metals in its products.[3]

4.      Given the health risks associated with the consumption of high levels of toxic heavy metals, the presence of these substances is material to consumers.

5.      Defendant knew that the presence of toxic heavy metals in its baby food products was material to consumers, which is evidenced by its representations that its baby food products are organic, non-GMO, free from preservatives, and safe for consumption by infants and young children. Yet Defendant chose to omit and conceal that its baby food products contained, or were at risk of containing, levels of heavy toxic metals, and therefore deceptively misled Plaintiffs and members of the Classes that purchased these products in reliance on Defendant's representations.

---

[1] *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report, Staff of H. Subcomm. On Econ. And Consumer Policy, Comm. On Oversight and Reform, 117th Cong., https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (Feb. 4, 2021) ("Subcommittee Report").

[2] *Id.* at 46.

[3] *Id.*

6.      Plaintiffs seek relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendant's falsely and deceptively labeled baby food products during the statute of limitations period, for breach of express and implied warranty, fraud by omission, intentional and negligent misrepresentation, quasi contract, unjust enrichment, and restitution, and for violations of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*, New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 350, and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.*

## THE PARTIES

7.      Plaintiff Lynn Huntley ("Plaintiff Huntley") is a citizen of the State of Connecticut and is a member of the Nationwide Class and the Connecticut Subclass. Plaintiff Huntley purchased various flavors of Sprout's Baby Food Pouches during the applicable statutory period, including Apple Banana Butternut Squash, Carrot Apple Mango, Pear Kiwi Peas Spinach, Strawberry Pear Banana, Sweet Potato Apple Spinach, Apple Oatmeal Raisin, Blueberry Banana Oatmeal, Mixed Berry Oatmeal, Peach Oatmeal with Coconut Milk & Pineapple, Butternut Carrot & Apple with Beef Broth, Homestyle Vegetables & Pear with Chicken Broth, and Strawberry Apple Beet Red Beans.

8.      Plaintiff Salvatore Stile ("Plaintiff Stile") is a citizen of the State of New York and is a member of the Nationwide Class and the New York Subclass. Plaintiff Stile purchased various flavors of Sprout's Baby Food Pouches and Puffs during the applicable statutory period.

9.      Plaintiff Emily Simmons ("Plaintiff Simmons") is a citizen of the State of Florida and is a member of the Nationwide Class and the Florida Subclass. Plaintiff purchased various flavors of Sprout's Baby Food Pouches during the applicable statutory period.

3

10.     Plaintiff Frances Pressley ("Plaintiff Pressley") is a citizen of the State of Georgia and is a member of the Nationwide Class and the Georgia Subclass. Plaintiff Pressley purchased various flavors of Sprout's Baby Food Pouches and meals during the applicable statutory period, including Carrot Chickpeas Zucchini Pear Baby Food Pouch, Strawberry Apple Beet Red Beans Baby Food Pouch, Apricot Banana Chickpea Fig Baby Food Pouch, Apple Oatmeal Raisin with Cinnamon Baby Food Pouch, Blueberry Banana Oatmeal Baby Food Pouch, Mixed Berry Oatmeal Baby Food Pouch, Peach Oatmeal with Coconut Milk & Pineapple Baby Food Pouch, Apple Kale Plant Power Puffs, Carrot Peach Mango Plant Power Puffs, Apple with Beef Baby Food Pouch, Toddler Apple Carrot Cinnamon Wafflez, Toddler Blueberry Apple Wafflez, Toddler Broccoli Curlz, Toddler Cheesy Spinach Crinklez, Toddler Butternut Mac & Cheese Meal, Toddler Pasta with Veggie Sauce Meal, and Toddler Veggie Power Bowl.

11.     Plaintiffs believed they were feeding their children healthy, nutritious foods during the time they purchased and fed their children Defendant's baby food products. Due to the false and misleading claims and omissions by Defendant as described herein, Plaintiffs were unaware that the baby food products sold by Defendant contained any level of toxic heavy metals, and Plaintiffs would not have purchased the products, or paid as much as they did, if that information had been fully disclosed.

12.     Defendant Sprout is a citizen of Delaware, where it is incorporated, and New Jersey, where it maintains its principal place of business at 50 Chestnut Ridge Road, #205, Montvale, NJ 07645. Defendant Sprout formulates, develops, manufactures, distributes, markets, advertises and sells its baby food products throughout the United States.

13.     The true names and capacities of Does 1 through 10, inclusive, are unknown to Plaintiffs at this time, and Plaintiffs therefore sues such Doe defendants under fictitious names.

Upon information and belief, each defendant designated as a Doe is in some manner highly responsible for the occurrences alleged herein, and Plaintiffs and Class members' injuries and damages, as alleged herein, were proximately caused by the conduct of such Doe defendants. Plaintiffs will seek leave of the Court to amend this First Amended Complaint to allege the true names and capacities of such Doe defendants when ascertained.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs are citizens of states different from Defendant. Further, greater than two-thirds of the Class members reside in states other than the state in which Defendant is a citizen.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that Plaintiff Huntley resides and was injured in this district wherein a substantial part of the events or omissions giving rise to her the claims occurred. Further, Defendant (a) is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district; (b) does substantial business in this district; and (c) is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### A.     Defendant Falsely Marketed and Advertised its Baby Food Products

16.     Defendant manufactures, market, advertise, label, represent, warrant, distribute, and sell baby food products throughout the United States under the Sprout label. Defendant makes various representations about its Products (defined below), including that they are "organic" "non-GMO" and "preservative free."

5

17.     Defendant's slogan for Sprout baby food is "Keep it Honest. Make it Real."[4] Defendant promises that it is committed to providing families with the "highest quality products"[5] and that it "rigorously source[s] the ingredients used in our recipes to ensure that the cleanest and safest food is delivered to your family."[6]

18.     Defendant states that its "primary value is providing safe, healthy and delicious food products for children."[7] Defendant further represents "[i]f it isn't safe, healthy and delicious, we don't make it. Our ingredients and packaging are carefully chosen to make the best products possible."[8]

19.     The products at issue are various types of Sprout baby food products that contain, or may contain, heavy metals, including, but not limited to, the Sprout products purchased by Plaintiffs ("Products"),[9] and may include other Sprout Products, including, but not limited to:

- Sprout Stage 2 (6+ months) Butternut Carrot & Apple with Beef Broth Baby Food Pouch
- Sprout Stage 2 (6+ months) Homestyle Vegetables & Pear with Chicken Broth Baby Food Pouch
- Sprout Stage 2 (6+ months) Apricot Banana Chickpea Fig Baby Food Pouch
- Sprout Stage 2 (6+ months) Butternut Blueberry Apple with Beans Baby Food Pouch
- Sprout Stage 2 (6+ months) Carrot Chickpeas Zucchini Pear Baby Food Pouch
- Sprout Stage 2 (6+ months) Strawberry Apple Beet Red Beans Baby Food Pouch
- Sprout Stage 2 (6+ months) Sweet Potato White Beans with Cinnamon Baby Food Pouch
- Sprout Stage 2 (6+ months) Apple Banana Butternut Squash Baby Food Pouch
- Sprout Stage 2 (6+ months) Apple Blueberry Baby Food Pouch
- Sprout Stage 2 (6+ months) Apricot Peach Pumpkin Baby Food Pouch
- Sprout Stage 2 (6+ months) Carrot Apple Mango Baby Food Pouch
- Sprout Stage 2 (6+ months) Pear Kiwi Peas Spinach Baby Food Pouch
- Sprout Stage 2 (6+ months) Strawberry Pear Banana Baby Food Pouch

---

[4] *Sprout Organic Foods*, http://www.sproutorganicfoods.com/
[5] *Sprout Organic Foods, Values & Guarentee*, http://www.sproutorganicfoods.com/about-us/values-guarantee
[6] *Sprout Organic Foods, Sourcing*, http://www.sproutorganicfoods.com/about-us/sourcing
[7] *Sprout Organic Foods, FAQs*, http://www.sproutorganicfoods.com/about-us/sourcing
[8] *Id.*
[9] Plaintiff reserves the right to amend this definition upon completion of discovery.

- Sprout Stage 2 (6+ months) Sweet Potato Apple Spinach Baby Food Pouch
- Sprout Stage 2 (6+ months) Apple Oatmeal Raisin with Cinnamon Baby Food Pouch
- Sprout Stage 2 (6+ months) Blueberry Banana Oatmeal Baby Food Pouch
- Sprout Stage 2 (6+ months) Mixed Berry Oatmeal Baby Food Pouch
- Sprout Stage 2 (6+ months) Peach Oatmeal with Coconut Milk & Pineapple Baby Food Pouch
- Sprout Stage 2 (6+ months) Apple Kale Plant Power Puffs
- Sprout Stage 2 (6+ months) Carrot Peach Mango Plant Power Puffs
- Sprout Stage 3 (8+ months) Butternut Chickpea Quinoa & Dates Baby Food Pouch
- Sprout Stage 3 (8+ months) Pumpkin Apple Red Lentil with Cinnamon Baby Food Pouch
- Sprout Stage 3 (8+ months) Sweet Pea Carrot Corn and White Bean Baby Food Pouch
- Sprout Stage 3 (8+ months) Creamy Vegetables with Chicken Baby Food Pouch
- Sprout Stage 3 (8+ months) Garden Vegetables Brown Rice with Turkey Baby Food Pouch
- Sprout Stage 3 (8+ months) Harvest Vegetables Apricot with Chicken Baby Food Pouch
- Sprout Stage 3 (8+ months) Market Vegetables Pear with Turkey Baby Food Pouch
- Sprout Stage 3 (8+ months) Root Vegetables Apple with Beef Baby Food Pouch
- Sprout Toddler Cheesy Spinach Crinklez
- Sprout Toddler Pumpkin Carrot Crinklez
- Sprout Toddler Broccoli Curlz
- Sprout Toddler Sweet Potato Cinnamon Curlz
- Sprout Toddler White Cheddar Curlz
- Sprout Toddler Red Fruit Beet & Berry Crispy Chews
- Sprout Toddler Apple Carrot Cinnamon Wafflez
- Sprout Toddler Blueberry Apple Wafflez
- Sprout Toddler Pumpkin Butter & Jelly Wafflez
- Sprout Toddler Baby Burrito Bowl Meal
- Sprout Toddler Butternut Mac & Cheese Meal
- Sprout Toddler Pasta with Veggie Sauce Meal
- Sprout Toddler Veggie Power Bowl Meal

20.     Defendant uses words such as "organic" and ages such as "6+ Months", "8+ Months" and "Toddler" to emphasize the foods suitability for consumption by infants and young children.

21.     Defendant's labels and packaging do not disclose that the Products contain, or may contain, levels of toxic heavy metals.

**B.      Defendant's Marketing and Advertising Misled and Deceived Consumers**

22.     Parent consumers are drawn to representations such as the ones claimed on Defendant's website and packaging because parents pay attention to what ingredients are in the baby food they purchase for their children. Parents are cautious and vigilant because they do not want to expose their children to potentially harmful substances or chemicals, such as heavy metals like arsenic, lead, mercury, and cadmium.

23.     Defendant's marketing of its Products wrongfully conveys to consumers that the Products have certain superior quality and characteristics that they do not actually possess. For example, Defendant's misrepresentations caused Plaintiffs and other consumers to believe that its Products do not contain high levels of toxic heavy metals through its marketing and omissions, which is material information to a reasonable consumer.

24.     In light of Defendant's marketing, including its professed commitment to providing organic, non-GMO products that are free from preservatives, Defendant knew or should have known that the Products contained toxic heavy metals or potentially dangerous contaminants that pose health risks to humans, and particularly to infants and young children. Defendant knew consumers purchased the Products based on the reasonable expectation that Defendant manufactured the Products in a way that was prescribed by their marketing and advertising.

25.     Defendant intended that Plaintiffs and Class Members and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Defendant, including its advertising,

marketing, and labeling of the Products as organic, non-GMO, free from preservatives, and safe for infant and child consumption.

26.     Based on Defendant's decision to advertise, label, and market its Products as organic, non-GMO and free from artificial preservatives, Defendant had a duty to ensure that these statements were true and not misleading. As such, Defendant knew or should have known that the Products included nondisclosed levels of toxic heavy metals.

27.     However, Defendant's marketing is deceptive, misleading, unfair and false to Plaintiffs and other consumers of its Products. Defendant failed to disclose that the Products contain or may contain any level of heavy metals or other undesirable toxins or contaminants. Defendant intentionally omitted this in order to induce and mislead reasonable consumers like Plaintiffs and members of the Classes to purchase the Products.

28.     As a result of Defendant's omissions, a reasonable consumer would have no reason to suspect the presence of heavy metals in the Products without conducting his or her own tests or relying on tests conducted by a third party.

29.     Defendant therefore acted negligently, recklessly, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false marketing and omissions as described herein.

**C.      Heavy Metals**

30.     Heavy metals such as arsenic, lead, mercury, and cadmium are known as "developmental neurotoxins" that can harm a baby's developing brain and nervous system. Exposure to these neurotoxins can result in a loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder ("ADHD").[10] Though heavy metals are naturally found in the environment, most heavy metals in foods come from contaminated soil or

---

[10] Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, Healthy Babies Bright Futures, at 9 (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf.

9

water. The contamination comes from either farming or manufacturing practices, such as the use of pesticides, mining, and smelting or pollution.

31. The U.S. Food and Drug Administration ("FDA") has declared that inorganic arsenic, lead, cadmium, and mercury are dangerous, particularly to infants and children, and "lead to illness, impairment, and in high doses, death."[11]

32. Healthy Babies Bright Futures—an alliance of nonprofit organizations, scientists and donors that design and implement programs to reduce babies' exposure to toxic chemicals— tested a variety of baby foods to determine the levels of heavy metals contained in their products and published their report in or around October 2019 ("Healthy Babies Bright Futures Report").[12]

33. The Healthy Babies Bright Futures Report revealed that the Sprout Organic Quinoa Apple Kale Puffs contains 107 parts per billion ("ppb") of arsenic, 47 ppb of which was inorganic arsenic, 39.3 ppb of lead, 41.5 ppb of cadmium, and 1.31 ppb of mercury.[13]

34. In addition to the Healthy Babies Bright Futures Report, the Subcommittee published a report revealing findings that numerous baby foods are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[14] Defendant did not cooperate with the Subcommittee's investigation. Defendant refused to produce any documents showing their internal testing policies, testing results, or how it treats ingredients and/or products that surpass any internal standards.[15]

---

[11] Subcommittee Report at 9.
[12] *See generally* Healthy Babies Bright Futures Report.
[13] *Id.* at 26.
[14] Subcommittee Report at 9.
[15] *Id.* at 43.

35.     As noted by the Subcommittee, babies' developing brains are "exceptionally sensitive to injury caused by toxic chemicals, and several developmental processes have been shown to be highly vulnerable to chemical toxicity."[16]

36.     Further, the Subcommittee Report noted that exposing children to toxic heavy metals causes permanent decreases in IQ, an increased risk of future criminal and antisocial behavior, and "untreatable and frequently permanent" brain damage. The Subcommittee Report demonstrated the consequences that can result due to exposure to toxic heavy metals, noting that one study showed that for each IQ point lost, a child's lifetime estimated earning capacity will decrease by over $18,000.[17]

a.     **Arsenic**

37.     Arsenic is a heavy metal contaminant that is found in food and drinking water from its long-time use as a pesticide and additive in animal feed. Arsenic has been known to cause bladder, lung, and skin cancer, and can also harm the developing brain and nervous system.[18] At least 13 studies link arsenic to IQ loss for children exposed to it in utero or during the first few years of life.[19]

38.     Another study on the effects of arsenic revealed an average loss of 5-6 IQ points among those who drank well water contaminated with arsenic at or above 5 ppb.[20] Studies find lasting impacts when young children are exposed to arsenic early in life, and there is no evidence that the effects of exposure are reversible.[21]

---

[16] Subcommittee Report at 9.
[17] *Id.*
[18] Healthy Babies Bright Futures Report at 13.
[19] *Id.*
[20] *Id.*
[21] *Id.* ("Studies find lasting impacts when children are exposed to arsenic early in life, including persistent IQ deficits in children two years after their polluted drinking water was replaced, cognitive deficits among school-age

39.     The harmful effects of exposure to arsenic have caused the FDA to set standards limiting the allowable amount of inorganic arsenic in various products, such as 10 ppb for bottled water.[22] However, the Sprout Organic Quinoa Apple Kale Puffs contains 107 parts per billion of arsenic, 47 ppb of which was inorganic arsenic.[23]

**b.      Cadmium**

40.     Cadmium is a heavy metal that has been linked to neurotoxicity, cancer, kidney damage, bone damage, and heart damage.[24]

41.     Cadmium is a number seven on the Agency For Toxic Substances and Disease Registry's ("ATSDR") list of substances that is present in the environment that pose the most significant potential threat to human health, and is associated with decreases in IQ and the development of ADHD.[25]

42.     The FDA has set the maximum allowable level of cadmium in bottled water at 5 ppb.[26] However, according to the Subcommittee's findings, the test results of baby foods and their ingredients "eclipse those levels."[27] In fact, Sprout Organic Quinoa Apple Kale Puffs contains 41.5 ppb of cadmium.[28]

**c.      Lead**

43.     Lead is a heavy metal that widely contaminates food from its long-time use as a pesticide, its use in food processing equipment, and its presence at elevated levels in soil.[29] Lead is a number two on ATSDR's list of substances present in the environment that pose the most

---

children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."
[22] 21 C.F.R. § 165.110; Subcommittee report at 4.
[23] Healthy Babies Bright Futures Report at 26.
[24] *Id.* at 14.
[25] Subcommittee report at 12.
[26] *Id.* at 4.
[27] *Id.*
[28] Healthy Babies Bright Futures Report at 26.
[29] *Id.* at 13.

significant potential threat to human health, and is associated with behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.[30]

44.     According to the FDA, lead is especially dangerous to infants and young children.[31] Lead exposure has been shown to severely affect academic achievement in children, and the effects of early childhood exposure appear to be permanent.[32]

45.     The FDA has set the maximum allowable levels in bottled water at 5 ppb of lead.[33] However, Sprout Organic Quinoa Apple Kale Puffs contain 39.3 ppb of lead.[34]

**d.     Mercury**

46.     Mercury is a pollutant released from coal-fired power plants, mining operations and other sources.[35] Mercury is number three on ATSDR's list of substances present in the environment that pose the most significant potential threat to human health.[36]

47.     Pre-natal mercury exposure has been "consistently associated with adverse subsequent neuro-development," and post-natal mercury exposure has been associated with autistic behaviors among preschool-age children.[37]

48.     The FDA has capped the allowable level of mercury in drinking water at 2 ppb.[38]

**D.     Plaintiffs and Class Members' Reliance was Reasonable**

49.     Plaintiffs and Class Members reasonably relied on Defendant's claims, warranties, representations, advertisements, and other marketing sources concerning the quality of the Products.

---

[30] Subcommittee Report at 11.
[31] *Id.*
[32] *Id.*
[33] *Id.* at 4.
[34] Healthy Babies Bright Futures Report at 14.
[35] *Id.* at 14.
[36] Subcommittee Report at 12.
[37] *Id.* at 12–13.
[38] *Id.* at 4.

50.     Plaintiffs and Class Members read and relied upon the labels and packaging of the Products when making purchasing decisions. Had Plaintiffs and Class Members known Defendant's Products actually contained high levels of heavy metals, Plaintiffs and Class Members would not have purchased the Products.

51.     A reasonable consumer would consider the labeling of a product when deciding whether or not to purchase it. Here, Plaintiffs and Class Members relied on the statements and omissions on the Products' labeling that led them to believe the Products were organic, non-GMO, free from preservatives, and did not contain levels of toxic heavy metals.

## CLASS ACTION ALLEGATIONS

52.     Plaintiffs bring this action individually and on behalf of all other similarly situated Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure and seek certification of the following Classes (collectively referred to herein as the "Classes"):

**Nationwide Class**

All persons within the United States who purchased Sprout Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**Connecticut Subclass**

All persons within the State of Connecticut who purchased Sprout Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**New York Subclass**

All persons within the State of New York who purchased Sprout Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**Florida Subclass**

All persons within the State of Florida who purchased Sprout Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

### Georgia Subclass

All persons within the State of Georgia who purchased Sprout Baby Food
Products for household or business use during the applicable statute of limitations
and who have not received a refund or credit for their purchase(s).

53.     Excluded from the Classes are the following individuals and/or entities:

Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former

employees, and any entity in which Defendant has a controlling interest; all individuals who

make a timely election to be excluded from this proceeding using the correct protocol for opting

out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family

members.

54.     Plaintiffs reserve the right to modify or amend the definition of the proposed

Classes and/or add additional subclasses before the Court determines whether certification is

appropriate.

55.     **Numerosity**: The proposed Classes and Subclasses are so numerous that joinder

of all members would be impractical. The Products are sold throughout the United States,

directly and by third-party retailers. The number of individuals who purchased the Products

during the relevant time period is at least in the thousands. Accordingly, Class Members are so

numerous that their individual joinder herein is impractical. While the precise number of Class

Members and their identities are unknown to Plaintiffs at this time, these Class Members are

identifiable and ascertainable.

56.     **Common Questions Predominate**: There are questions of law and fact common

to the proposed Classes and Subclasses that will drive the resolution of this action and will

predominate over questions affecting only individual Class Members. These questions include,

but are not limited to, the following:

a.      Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

b.      Whether Defendant's use of false or deceptive packaging and advertising constituted false or deceptive advertising;

c.      Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

d.      Whether Defendant's representations concerning the Products were likely to deceive a reasonable consumer;

e.      Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

f.      Whether Defendant represents to consumers that the Products have characteristics, benefits, or qualities that they do not have;

g.      Whether Plaintiffs and the Classes are entitled to damages and/or restitution, and in what amount;

h.      Whether Defendant is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

i.      Whether Plaintiffs and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

57.     Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs and members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance,

16

from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiffs and members of the Classes has directly resulted from a single course of illegal conduct. Each Class Member has been exposed to the same deceptive practice, as each of the Products: (a) bear the materially same representations regarding the health and quality of the Products, in that they are organic, non-GMO, free from preservatives and safe for consumption by infants and young children, and (b) the Products actually contain or are at risk of containing levels of toxic heavy metals. Therefore, individual questions, if any, pale in comparison to the numerous common questions predominating in this action.

58.     **Typicality**: The representative Plaintiffs' claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

59.     **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with, and are in no way antagonistic to, the interests of the putative Class Members they seek to represent.  Plaintiffs have also retained counsel competent and experienced in class action litigation and they intend to prosecute this action vigorously. The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

60.     **Superiority**: The nature of this action and the nature of the laws available to Plaintiffs and the Classes make the use of the class action format a particularly efficient and appropriate procedure to afford relief to them and the Classes for the wrongs alleged. The damages or other financial detriment suffered by individual Class Members is miniscule compared to the burden and expense that would be entailed by individual litigation of their

claims against Defendant. It would thus be virtually impossible for Plaintiffs and Class Members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class Members would not likely recover, or would not likely have the chance to recover, damages and/or restitution from Defendant, which would continue to retain the proceeds of its wrongful conduct. Additionally, injunctive relief for the benefit of Class Members and the public would not be possible absent class treatment and Defendant's wrongful conduct would persist unabated. Further, individualized litigation would increase the delay and expense to all parties and would multiply the burden on the judicial system presented by the complex legal and factual issues of this case. Finally, Defendant has acted, or has failed to act, on grounds generally applicable to Plaintiffs and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes. Individualized litigation presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Breach of Express Warranty**
***(On behalf of the Classes)***

61.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1–60 as though fully set forth herein.

62.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant for breach of express warranty.

63.     Defendant marketed and sold the Products into the stream of commerce with the intent that the Products would be purchased by Plaintiffs and members of the Classes.

64.     Defendant expressly warranted, advertised, and represented to Plaintiffs and members of the Classes that the Products were and are organic, non-GMO, free from preservatives, and safe for infant and child consumption.

65.     Defendant made these express warranties regarding the Products' quality, ingredients, and suitability for consumption in writing through their website, advertisements, and marketing materials and on the Products' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and members of the Classes entered into upon purchasing the Products.

66.     Defendant's advertisements, warranties, and representations were made in connection with the sale of the Products to Plaintiffs and members of the Classes. Plaintiffs and members of the Classes relied on Defendant's advertisements, warranties, and representations regarding the Products in deciding whether or not to purchase Defendant's Products.

67.     Defendant's Products do not conform to Defendant's advertisements, warranties and representations in that they are not safe or appropriate for consumption by infants and young children, and contain, or may contain, levels of toxic heavy metals.

68.     Defendant was on notice of this breach, as Defendant was aware of the included heavy metals in the Products due to its own professed commitment to providing high quality organic and non-GMO products, and based on the investigation in the Healthy Babies Bright Futures report that revealed Products as containing levels of toxic heavy metals.

69.     Privity exists because Defendant expressly warranted to Plaintiffs and members of the Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were organic, non-GMO, free from preservatives, and safe for infant and child

consumption, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

70.     As a direct and proximate result of Defendant's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they purchased Products that were worth less than the price they paid and they would not have purchased had they known of the risk and/or presence of heavy metals and/or other contaminants that do not conform to the Products' marketing and advertisements.

71.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**SECOND CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
***(On behalf of the Classes)***

72.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1–60 as though fully set forth herein.

73.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant for breach of implied warranty of merchantability.

74.     Defendant is a merchant engaging in the manufacturing and sale of goods that were purchased by Plaintiffs and members of the Classes.

75.     At all times mentioned herein, Defendant manufactured or supplied the Products, and prior to the time the Products were purchased by Plaintiffs and members of the Classes, Defendant impliedly warranted to them that the Products were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Products' containers and labels, including that the food was organic, non-GMO, free from preservatives,

and safe for infant and child consumption. Plaintiffs and members of the Classes relied on Defendant's promises and affirmations of fact when they purchased the Products.

76.     Contrary to these representations and warranties, the Products were not fit for their ordinary use, consumption by infants or young children, and did not conform to Defendant's affirmations of fact and promises as they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

77.     Defendant breached its implied warranties by selling Products that failed to conform to the promises or affirmations of fact made on the container or label, as each Product contained or was at significant risk of containing heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

78.     Defendant was on notice of this breach, as Defendant was aware of the included heavy metals in the Products due to its own professed commitment to providing high quality organic and non-GMO products, and based on the investigation in the Healthy Babies Bright Futures report that revealed Products as containing levels of toxic heavy metals.

79.     Privity exists because Defendant impliedly warranted to Plaintiffs and members of the Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were organic, non-GMO, free from preservatives, and safe for infant and child consumption, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

80.     As a direct and proximate result of Defendant's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they have purchased Products that are worth

less than the price they paid and that they would not have purchased at all had they known the presence or risk of heavy metals and/or unnatural or other ingredients.

81.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

### THIRD CAUSE OF ACTION
**Fraud by Omission**
*(On behalf of the Classes)*

82.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1–60 as though fully set forth herein.

83.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant for fraud by omission.

84.     Defendant concealed from and failed to disclose to Plaintiffs and members of the Classes that the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

85.     Defendant were under a duty to disclose to Plaintiffs and members of the Classes the true quality, characteristics, ingredients and suitability of the Products because: (1) Defendant was in a superior position to know the true state of facts about their Products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption by infants and young children; and (3) Defendant knew that Plaintiffs and members of the Classes could not reasonably have been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

86.     The facts concealed or not disclosed by Defendant to Plaintiffs and members of the Classes are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products.

87.     Plaintiffs and members of the Classes justifiably relied on Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Products, which is inferior when compared to how the Products are advertised and represented by Defendant.

88.     As a direct and proximate result of Defendant's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

89.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**FOURTH CAUSE OF ACTION**
**Negligent Misrepresentation**
*(On behalf of the Classes)*

90.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1–60 as though fully set forth herein.

91.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant for negligent misrepresentation.

92.     Defendant marketed the Products in a manner indicating that the Products were and are organic, non-GMO, free from preservatives, and safe for infant and child consumption. However, the Products contained, or were at risk of containing, heavy metals and/or unnatural or

other ingredients or contaminants that do not conform to the packaging. Therefore, Defendant has made misrepresentations about the Products.

93.     Defendant's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

94.     At all relevant times when such misrepresentations were made, Defendant knew or was negligent in not knowing that the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants. Defendant has no reasonable grounds for believing its misrepresentations were not false and misleading.

95.     Defendant intended that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Defendant, including its advertising, marketing, and labeling of the Products as organic, non-GMO, free from preservatives, and safe for infant and child consumption.

96.     Plaintiffs and members of the Classes have reasonably and justifiably relied on Defendant's negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased the Products at all.

97.     Therefore, as a direct and proximate result of Defendant's negligent misrepresentations, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or

unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

98.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## FIFTH CAUSE OF ACTION
### Intentional Misrepresentation
*(On behalf of the Classes)*

99.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-60 as though fully set forth herein.

100.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant for intentional misrepresentation.

101.     Defendant marketed the Products in a manner indicating that the Products were and are organic, non-GMO, free from preservatives, and safe for infant and child consumption. However, the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging. Therefore, Defendant has made misrepresentations about the Products.

102.     Defendant's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

103.     At all relevant times when such misrepresentations were made, Defendant knew that the representations were misleading, or acted recklessly in making the representations, without regard to the truth.

104.    Defendant intended that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Defendant, including its advertising, marketing, and labeling of the Products as organic, non-GMO, free from preservatives, and safe for infant and child consumption.

105.    Plaintiffs and members of the Classes have reasonably and justifiably relied on Defendant's intentional misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at all.

106.    Therefore, as a direct and proximate result of Defendant's intentional misrepresentations, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

107.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**SIXTH CAUSE OF ACTION**
**Quasi Contract/Unjust Enrichment/Restitution**
*(On behalf of the Classes)*

108.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1–60 as though fully set forth herein.

109.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant for quasi contract, unjust enrichment, and restitution.

110.    As alleged herein, Defendant has intentionally and recklessly made misleading representations to Plaintiffs and members of the Classes to induce them to purchase the Products. Plaintiffs and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendant. Plaintiffs and members of the Classes therefore have been induced by Defendant's misleading and deceptive representations about the Products and paid more money to Defendant for the Products than they otherwise would and/or should have paid.

111.    Plaintiffs and members of the Classes have conferred a benefit upon Defendant as Defendant has retained monies paid to it by Plaintiffs and members of the Classes.

112.    The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the Classes—i.e., Plaintiffs and members of the Classes did not receive the full value of the benefit conferred upon Defendant.

113.    Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon it without paying Plaintiffs and the members of the Classes back the difference in the full value of the benefits conferred upon it compared to the value actually received by Plaintiffs and Class Members.

114.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct as alleged herein.

## SEVENTH CAUSE OF ACTION
### Florida Deceptive and Unfair Trade Practices Act
### Fla. Stat. §§ 501.201 *et seq.*
### (*On behalf of Plaintiff Emily Simmons and the Florida Subclass*)

115.    Plaintiff Simmons repeats and realleges the allegations contained in paragraphs 1-60 as if fully set forth herein.

116.    Plaintiff Simmons brings this claim individually and on behalf of the members of the proposed Florida Subclass against Defendant for violations of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

117.    Plaintiff Simmons and members of the Florida Subclass are "consumers," as defined by Fla. Stat. § 501.203(7), the Products sold by Defendant are "goods" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and the transactions at issue constitute "trade or commerce" as defined by FDUTPA.

118.    FDUTPA, Fla. Stat. § 501.204, provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

119.    For the reasons discussed herein, Defendant violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Fla. Stat. § 501.201, *et seq*. Defendant's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including Plaintiff Simmons and members of the Florida Subclass and other consumers acting reasonably under the circumstances, to their detriment.

120.    At all times mentioned herein, Defendant engaged in trade or commerce in Florida, as defined by Fla. Stat. § 501.203(8), in that it advertised, offered for sale, sold or

distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

121.     Defendant repeatedly advertised on the labels for its Products, on its website, packaging, and through national advertising campaigns, among other things, that its Products were organic, non-GMO, free from preservatives, and safe for infant and child consumption. Defendant failed to disclose the material information that its Products contained or were at significant risk of containing unsafe levels of toxic heavy metals.

122.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers and to induce them to purchase Defendant's Products without knowing that the Products contained or were at significant risk of containing unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Simmons and members of the Florida Subclass suffered damages by purchasing Defendant's Products because they would not have purchased Defendant's Products had they known the truth, that the Products contain, or may contain, levels of toxic heavy metals.

123.     Defendant's deceptive trade practices caused Plaintiff Simmons and members of the Florida Subclass to suffer injury in fact and actual damages in the form of the loss or diminishment of value of the Products they purchased, which allowed Defendant to profit at the expense of Plaintiff Simmons and members of the Florida Subclass. The injuries Plaintiff Simmons and members of the Florida Subclass suffered were to legally protected interests. The gravity of the harm of Defendant's actions is significant and there is no corresponding benefit to consumers of such conduct.

124.    Plaintiff Simmons and members of Florida Subclass seek relief for the injuries they have suffered as a result of Defendant's unfair and deceptive acts and practices, as provided by FDUTPA and applicable law.

**EIGHTH CAUSE OF ACTION**
**New York Deceptive Acts and Practices Act**
**N.Y. Gen. Bus. Law § 349**
(***On behalf of Plaintiff Salvatore Stile and the New York Subclass***)

125.    Plaintiff Stile repeats and realleges the allegations contained in paragraphs 1–60 as if fully set forth herein.

126.    Plaintiff Stile brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendant for violations of New York Deceptive Acts and Practices Act ("NYDAPA"), N.Y. Gen. Bus. Law § 349.

127.    Plaintiff Stile and members of the New York Subclass are "persons" under NYDAPA. N.Y. Gen. Bus. Law § 349(h).

128.    Defendant's actions as set forth herein occurred in the conduct of trade or commerce under NYDAPA.

129.    NYDAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Defendant's conduct, as set forth herein, constitutes deceptive acts or practices under this section.

130.    In the course of business, Defendant made affirmative misrepresentations that conveyed to Plaintiff Stile and members of the New York Subclass that the Products were safe for consumption by infants and young children.[39] Defendant, however, misrepresented these

---

[39] *See, e.g., supra*, ¶¶ 16-18, 20.

claims and concealed and suppressed material facts concerning the Products, including that they contained unsafe levels of heavy metals.

131.    Plaintiff Stile and members of the New York Subclass had no way of discerning that Defendant's representations were false and misleading without conducting their own scientific tests.

132.    Defendant thus violated NYDAPA by making statements, when considered as a whole from the perspective of a reasonable consumer, that conveyed that its Products were safe for consumption by infants and young children. Defendant failed to disclose and warn that its Products were unsafe and unsuitable for consumption by infants and young children, and that the Products contained, or were at risk of containing, levels of toxic heavy metals.

133.    Defendant intentionally and knowingly made affirmative misrepresentations and failed to disclose material facts regarding their Products with intent to mislead Plaintiff Stile and members of the New York Subclass.

134.    Defendant knew or should have known that its conduct violated NYDAPA, and it owed a duty to Plaintiff Stile and members of the New York Subclass to disclose the true and unsafe nature of its Products.

135.    Defendant's affirmative misrepresentations and concealment of the level of heavy metals in its Products was material to Plaintiff Stile and members of the New York Subclass, as they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Products.

136.    Defendant's unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Stile and members of the New York Subclass,

about the safety of their Products. Plaintiff Stile and members of the New York Subclass would not have purchased the Products had they known that the Products were unsafe for consumption by infants and young children, and that they contained, or were at risk of containing, high levels of toxic heavy metals.

137.   Defendant's violations present a continuing risk to Plaintiff Stile and members of the New York Subclass as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

138.   As a direct and proximate result of Defendant's misrepresentations, concealment of, and failure to disclose material information, as well as Defendant's deceptive and unfair acts and practices made during the course of Defendant's business, Plaintiff Stile and members of the New York Subclass suffered ascertainable loss and actual damages.

139.   Plaintiff Stile and members of the New York Subclass seek relief for the injuries they have suffered as a result of Defendant's unfair and deceptive acts and practices, as provided by NYDAPA and applicable law, including, but not limited to, injunctive relief enjoining Defendant's deceptive and unlawful acts and practices described herein, recovery of actual damages and/or fifty dollars in statutory damages, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

### NINTH CAUSE OF ACTION
**New York Deceptive Acts and Practices Act**
**N.Y. Gen. Bus. Law § 350**
(***On behalf of Plaintiff Salvatore Stile and the New York Subclass***)

140.   Plaintiff Stile repeats and realleges the allegations contained in paragraphs 1–60 as if fully set forth herein.

141.    Plaintiff Stile brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendant for violations of New York False Advertising Act ("NYFAA"), N.Y. Gen. Bus. Law § 350.

142.    The NYFAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of ... representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350(a).

143.    Defendant caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements and omissions that were untrue or misleading, and that were known, or should have been known through the exercise of reasonable care by Defendant, to be untrue and misleading.

144.    Defendant made numerous material and affirmative misrepresentations and omissions of fact with intent to mislead and deceive consumers concerning their Products. Specifically, Defendant misrepresented its Products safety and suitability for consumption by infants and young children and intentionally concealed and suppressed material facts concerning the safety of its Products, and that they contained, or were at risk of containing, high levels of toxic heavy metals. Defendant intentionally and grossly defrauded and misled Plaintiff Stile and members of the New York Subclass concerning the true and unsafe nature of their Products.

145.    The misrepresentations and omissions regarding the Products set forth herein were material and likely to deceive a reasonable consumer, as they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach

importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

146.    Defendant intentionally and knowingly misrepresented and omitted material facts regarding their Products with intent to mislead Plaintiff Stile and members of the New York Subclass.

147.    Defendant's false advertising was likely to and did in fact deceive reasonable consumers, including Plaintiff Stile and members of the New York Subclass, about the true nature of the safety and quality of their Products. Plaintiff Stile and members of the New York Subclass would not have purchased the Products had they known they were unsafe for consumption by infants and young children, and that they contained high levels of toxic heavy metals.

148.    Defendant's violations present a continuing risk to Plaintiff Stile and members of the New York Subclass as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

149.    As a direct and proximate result of Defendant's misrepresentations, concealment of, and failure to disclose material information, as well as Defendant's deceptive and unfair acts and practices made during the course of Defendants' business, Plaintiff Stile and members of the New York Subclass suffered ascertainable loss and actual damages.

150.    Plaintiff Stile and members of the New York Subclass seek relief for the injuries they have suffered as a result of Defendant's unfair and deceptive acts and practices, as provided by NYFAA and applicable law, including, but not limited to, injunctive relief enjoining Defendant's misleading and unlawful acts and practices described herein, recovery of actual

damages and/or five hundred dollars per violation, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

## <u>TENTH CAUSE OF ACTION</u>
### Connecticut Unfair Trade Practices Act
### Conn. Gen. Stat. § 42-110a *et seq.*
### (*On behalf of Plaintiff Huntley and the Connecticut Subclass*)

151.    Plaintiff Huntley repeats and realleges the allegations contained in paragraphs 1–60 as if fully set forth herein.

152.    Plaintiff Huntley brings this claim individually and on behalf of the members of the proposed Connecticut Subclass against Defendant for violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.*

153.    Defendant is engaged in "trade" and "commerce" as it offers baby food products for sale to consumers.

154.    Defendant's conduct as alleged above constitutes unfair practices because Defendant has advertised, and continues to advertise, on the labels for its Products, and on its website, packaging, and through national advertising campaigns, among other things, that its Products were organic, non-GMO, free from preservatives, and safe for infant and child consumption. Defendant failed to disclose the material information that their Products contained unsafe levels of toxic heavy metals.

155.    Defendant's acts and practices with regard to its failure to disclose the presence and levels of heavy metals present in its Products as alleged above are immoral, unethical, oppressive and unscrupulous.

156.    Defendant's conduct is substantially injurious to consumers and such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid such a high price for Defendant's Products but for Defendant's immoral, unethical,

35

oppressive and unscrupulous practices. Consumers have thus overpaid for Defendant's Products and such injury is not outweighed by any countervailing benefits to consumers or competition. No benefit to consumers or competition results from Defendant's misrepresentations and failure to disclose the presence or risk of toxic heavy metals in its Products, nor could consumers reasonably have avoided the injury.

157.    Defendant's conduct, as alleged above, also constitutes a deceptive act or practice. Defendant's misrepresentation and false advertisement that its Products are organic, non-GMO, free from preservatives, and safe for infant and child consumption, as set forth above, were and are likely to mislead consumers regarding the presence or risk of high levels of toxic heavy metals in Defendant's Products and Defendant intended that consumers rely upon those representations. Plaintiff Huntley and other reasonable consumers reasonably interpreted Defendant's representations to mean that Defendant's Products did not contain high levels of toxic heavy metals. Defendant's representations were material to a reasonable consumer and likely to affect consumer decisions and conduct, including purchases of Defendant's baby food Products.

158.    The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiff Huntley and members of the Connecticut Subclass to suffer an ascertainable loss and substantial injury, and were a substantial factor causing that injury, when Plaintiff Huntley and members of the Connecticut Subclass paid a premium for Defendant's Products they would not have otherwise paid but for Defendant's misrepresentations and concealment alleged above.

159.    The foregoing actions constitute unfair and deceptive practices in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq*

160.    Plaintiff Huntley and members of the Connecticut Subclass are entitled to recover damages and other appropriate relief, as alleged below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, respectfully pray for the following relief:

A.    Certification of this case as a class action on behalf of the Classes and Subclasses defined above, appointment of Plaintiffs as Class Representatives, and appointment of their counsel as Class counsel;

B.    A declaration that Defendant's actions, as described herein, constitute violations of the laws as described herein;

C.    An award to Plaintiffs and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

D.    An award of injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

E.    An order directing Defendant to engage in a corrective advertising campaign;

F.    An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct, trebled where appropriate;

G.      An award to Plaintiffs and their counsel of their reasonable expenses and attorneys' fees;

H.      An award to Plaintiffs and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

I.      For such further relief that the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury of all claims presented herein so triable.

Dated: May 26, 2021                    **IZARD, KINDALL & RAABE LLP**

By:  */s/ Oren Faircloth*
Oren Faircloth
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel:     860-493-6292
Fax:     860-493-6290
ofaircloth@ikrlaw.com

**CARLSON LYNCH LLP**
Todd D. Carpenter (to apply pro hac vice)
Scott G. Braden (to apply pro hac vice)
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.:   619-762-1900
Fax:    619-756-6991
tcarpenter@carlsonlynch.com
sbraden@carlsonlynch.com

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown (to apply pro hac vice)
Michael A. Tompkins (to apply pro hac vice)
Brett R. Cohen (to apply pro hac vice)
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel:     516-873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

*Attorneys for Plaintiffs*